UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEPPER HAMILTON LLP, )<br><br>Intervenor Plaintiff, )<br><br>v. )<br><br>WESTPORT INSURANCE CORPORATION )<br>AND EXECUTIVE RISK INDEMNITY, INC., )<br><br>Defendants. ) | Case No. 08 CV 01822 (DLC) |

**MEMORANDUM OF LAW OF PEPPER HAMILTON LLP IN SUPPORT OF
ITS SUGGESTION OF LACK OF SUBJECT MATTER JURISDICTION AND,
ALTERNATIVELY, ITS MOTION TO INTERVENE AND TO DISMISS**

CAHILL GORDON & REINDEL LLP
Charles A. Gilman
David G. Montone
Eighty Pine Street
New York, New York 10005
(212) 701-3000
*Attorneys for Pepper Hamilton LLP*

May 16, 2008

# TABLE OF CONTENTS

**Page**

STATEMENT OF FACTS.............................................................................. 1

ARGUMENT................................................................................................. 6

    I.    Pursuant To The Exception Clause In The Federal Diversity Stat-
           ute, 28 U.S.C. § 1332(c), This Court Currently Lacks Jurisdiction
           Over The Subject Matter Of This Action.......................................... 6

    II.    In The Event That This Court Finds That It Presently Has Jurisdic-
           tion Over The Subject Matter Of This Action, Pepper Is Entitled
           To Intervene As A Matter Of Right Under Rule 24(a) —— In Which
           Case Jurisdiction Will Be Destroyed.............................................. 9

    III.    This Action Should Be Dismissed Pursuant to Rule 19(b) Because
           Pepper Is An Indispensable Party And Its Presence In This Action
           Destroys Subject Matter Jurisdiction.............................................. 10

CONCLUSION............................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

## Cases

*All State Vehicles* v. *Allstate Insurance Co.*,
620 F. Supp. 444 (S.D.N.Y. 1985) ................................................................ 9n

*American Home Assurance Co.* v. *Babcock & Wilcox Co.*,
No. 06-CV-6506, 2007 WL 4299847 (E.D.N.Y. Dec. 6, 2007) .................. 14-15

*Bass & Ullman, P.C.* v. *Government Employees Insurance Co.*,
No. 94 Civ. 3428, 1994 WL 584554 (S.D.N.Y. Oct. 24, 1994) ................ 8n

*Brennan* v. *New York City Board of Education*,
260 F.3d 123 (2d Cir. 2001) ........................................................................ 10

*Carden* v. *Arkoma Assocs.*,
494 U.S. 185 (1990) ...................................................................................... 7

*Corn* v. *Precision Contracting, Inc.*,
226 F. Supp. 2d 780 (W.D.N.C. 2002) ........................................................ 8n

*D.B. Zwirn Special Opportunities Fund, L.P.* v. *Tama Broadcasting, Inc.*,
No. 08 Civ. 3125, --- F. Supp. 2d ----, 2008 WL 1862638 (S.D.N.Y. Apr.
28, 2008) ...................................................................................................... 7n

*Elom* v. *Fidelity & Guaranty Insurance Co.*,
208 F. Supp. 2d 867 (N.D. Ohio 2002) ...................................................... 7, 9n

*Exxon Mobil Corp.* v. *Allapattah Services, Inc.*,
545 U.S. 546 (2005) .................................................................................... 12

*Guthrie Clinic, Ltd.* v. *Travelers Indemnity Co.*,
104 Fed. Appx. 218, 2004 WL 1465688 (3d Cir. 2004) ............................ 15

*Handelsman* v. *Bedford Village Assocs.*,
213 F.3d 48 (2d Cir. 2000) .......................................................................... 7, 12

*Indianapolis* v. *Chase National Bank*,
314 U.S. 63 (1941) ...................................................................................... 12n

*Jonesfilm* v. *Lion Gate International*,
299 F.3d 134 (2d Cir. 2002) ........................................................................ 11

*Maryland Casualty Co.* v. *W.R. Grace and Co.*,
  23 F.3d 617 (2d Cir. 1994) .................................................... 12n

*Merrill Lynch & Co.* v. *Allegheny Energy, Inc.*,
  500 F.3d 171 (2d Cir. 2007) ................................................. 17n

*Picciotto* v. *Continental Casualty Co.*,
  512 F.3d 9 (1st Cir. 2008) .................................................. 14, 16

*R.L. Vallee, Inc.* v. *American International Specialty Lines Insurance Co.*,
  431 F. Supp 2d 428 (D. Vt. 2006) .......................................... 8n

*Rosa* v. *Allstate Insurance Co.*,
  981 F.2d 669 (2d Cir. 1992) ................................................. 7-8

*Saylab* v. *Hartford Mutual Insurance Co.*,
  271 F. Supp. 2d 112 (D.D.C. 2003) ....................................... 8

*Scott* v. *Progressive Casualty Insurance Co.*,
  No. CV486-256, 1987 U.S. Dist. LEXIS 6198 (S.D. Ga. June 29, 1987) .. 9n

*Shimkin* v. *Tompkins, McGuire, Wachenfeld & Barry*,
  No. 02 Civ. 9731, 2003 WL 21964959 (S.D.N.Y. Aug. 19, 2003) ............ 11-12, 14-16

*Sta-Rite Industries, Inc.*, v. *Allstate Insurance Co.*,
  96 F.3d 281 (7th Cir. 1996) ................................................. 15-16

*Uni Storebrand Insurance Co.* v. *Star Terminal Corp.*,
  96 Civ. 9556, 1997 U.S. Dist. LEXIS 9906 (S.D.N.Y. July 10, 1997) ...... 16-17

*Webb* v. *Lumberman's Mutual Casualty Co.*,
  No. 01-CV-00770A, 2004 WL 1529239 (W.D.N.Y. July 2, 2004) ........... 8

## **Rules**

Fed. R. Civ. P.

  19(a) ............................................................................ 10-11

  19(b) ............................................................................ 1, 10-17

  24(a) ............................................................................ 1, 9-10

  24(a)(2) ........................................................................ 9-10

## **Statutes**

28 U.S.C. § 1332 (2000), as amended ............................................. 6, 12

28 U.S.C. § 1332 (c) (2000), as amended ........................................................... 6-9

28 U.S.C. § 1332 (c)(1) (2000), as amended ...................................................... 1, 6-9

This Memorandum is submitted on behalf of Pepper Hamilton LLP ("Pepper").

This action was originally filed by Executive Risk Indemnity, Inc. ("ERII") against Westport Insurance Corporation ("Westport") in New York state court, and designated as "related" to an already-pending case involving these same parties. It was improvidently removed to this Court. Pursuant to the exception clause in 28 U.S.C. § 1332(c)(1), this Court lacks jurisdiction over the subject matter of this action. The action should be remanded to state court where it will be consolidated with the pending state court action, as it should be.

Alternatively, Pepper should be allowed to intervene of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure. The Court should realign the parties to reflect their true interests and should find Pepper to be an indispensable party within the meaning of Rule 19(b) of the Federal Rules of Civil Procedure. Because Pepper's joinder would destroy diversity jurisdiction, the action should be dismissed.

## STATEMENT OF FACTS[1]

Pepper is a law firm. Westport is Pepper's primary professional liability insurer. Pepper's excess insurers, including ERII, followed the form of the primary Westport policy.

The events at issue span three policy periods. From April 27, 2001 through October 27, 2002 (the "2001-02 Program"), Pepper purchased $50 million in professional liability coverage: a $20 million primary policy from Westport and a $30 million excess policy from Continental Casualty Company ("CNA"). From October 27, 2002 through October 27 2003 (the "2002-03 Program") Pepper purchased $40 million in coverage: a $10 million primary layer from Westport, and a tower of three excess layers of $10 million each from Twin City Fire In-

---

[1]     The facts set forth herein are taken from Pepper's Complaint in Intervention.

surance Company ("Hartford"), ERII and CNA.  Four identical layers of insurance were in force

from October 27, 2003 through October 27, 2004 (the "2003-04 Program").

| **2001/2002 Policy Year** **("Year 1")** | **2002/2003 Policy Year** **("Year 2")** | **2003/2004 Policy Year** **("Year 3")** |
|---|---|---|
| Westport . . . . $20 million | Westport . . . . . $10 million | Westport . . . . . $10 million |
| Westport | Hartford . . . . . $10 million | Hartford . . . . . $10 million |
| CNA . . . . . . $30 million | ERII . . . . . . . . $10 million | ERII . . . . . . . . $10 million |
| CNA | CNA . . . . . . . . $10 million | CNA . . . . . . . . $10 million |
| CNA | [none] | [none] |
| **Total ——— $50 million** | **Total ———$40 million** | **Total ———$40 million** |

Pepper resigned its representation of a client known as Student Finance Corpora-

tion ("SFC") in April 2002, during the 2001-02 Program, after SFC disclosed that it had engaged

in certain accounting irregularities.  No claims against Pepper were either threatened or asserted

then or at any time during the next two years.[2]  In April 2004, during the 2003-04 Program,

SFC's bankruptcy trustee telephoned Pepper's General Counsel and requested that Pepper enter

into a "tolling agreement" so that he could have time to consider whether or not to assert claims

against Pepper.  This was the first notice that Pepper had that any claim relating to SFC might be

asserted against it.  While Pepper had the option under its insurance policies of waiting to see if

the trustee actually decided to assert a claim before giving notice to its insurers, Pepper opted to

give immediate notice to Westport and all of its excess insurers of the trustee's request for a toll-

---

[2]     As shown in the chart above, after its resignation, Pepper substantially *reduced* the
amount of its insurance coverage (from $50 million to $40 million) — an action inconsis-
tent with any notion that the law firm thought that it might be sued in connection with its
representation of SFC.

ing agreement. In April 2004, Westport acknowledged Pepper's notice of "POTENTIAL

CLAIM."[3] In November 2004, the trustee sued Pepper and one of its partners, W. Roderick

Gagné, in Delaware. Pepper promptly notified its insurers. In March 2005, a creditor of SFC,

Royal Indemnity Company ("Royal"), also sued Pepper and Gagné in Delaware. Again, Pepper

promptly notified its insurers. These two actions are referred to as the "Underlying Actions."

      The primary Westport policy contains a "Continuous Coverage" provision incor-

porated in all of the excess insurers' policies that serve as an exception to the "claims made" tim-

ing of notice otherwise required to invoke coverage under the policies. That Continuous Cover-

age provision provides that claims made in a subsequent policy period "shall be considered to

have been first made and reported" during the policy period in effect when the insured "first be-

came aware of" the potential claim:

> "If, during this POLICY PERIOD, any INSURED provides written notice to the
> Company of a POTENTIAL CLAIM which any INSURED first became aware
> of during the period of a prior policy issued by the Company to the NAMED
> INSURED, which policy was Renewed continuously and without interruption
> through the inception of this POLICY, then any CLAIMS subsequently made
> against any INSURED arising from the POTENTIAL CLAIM shall be consid-
> ered to have been first made and reported during the policy period of the policy
> in effect when any INSURED first became aware of such POTENTIAL CLAIM
> subject to the terms, conditions and limits of liability of the policy in effect at
> such time."

---

[3]    The primary Westport policy defines "POTENTIAL CLAIM" as "1. any act, error, omis-
sion, circumstance or PERSONAL INJURY which might reasonably be expected to give
rise to a CLAIM against any INSURED under the POLICY; or 2. any breach of duty to a
client or third party which has not resulted in a CLAIM against any INSURED." The
primary Westport Policy defines "CLAIM" as "a demand made upon any INSURED for
LOSS . . . including, but not limited to, service of suit or institution of arbitration pro-
ceedings or administrative proceedings against any INSURED."

Despite the fact that Westport, the primary insurer whose policy controlled, had determined that coverage lay under the 2003-04 Program, the excess insurers could not reach agreement, disagreeing with Westport, among themselves, and with Pepper as to which of Pepper's insurance programs was to provide coverage to Pepper.

With Pepper caught in the middle, litigation ensued in January 2005 in New York State Supreme Court, New York County between Pepper and its four professional liability insurers (the "NY State Court Action"). Prior to any activity in the case, by Order of the State Court, the action was stayed, and nothing by way of pretrial proceedings took place until the stay was lifted in January 2007. When proceedings resumed, claims, counterclaims, cross-claims and third-party claims were filed as among and between Pepper and its four insurers. The positions of the parties broke down as follows:

**Pepper:** In 2002 and 2003, Pepper knew of no act, error, omission, circumstance or personal injury related to its representation of SFC that might form the basis for a claim for lawyers' professional liability. In April 2004, Pepper gave timely notice to its insurers of a "POTENTIAL CLAIM" that ripened into a "CLAIM" with the filing of the Trustee's lawsuit in November 2004. Pepper has coverage under its 2003-04 Program, or alternatively under the 2001-02 Program, by virtue of the Continuous Coverage provision in the controlling Westport policy.

**Westport:** Westport, which, in 2004, contemporaneously characterized Pepper's April 2004 notice as notice of a "Potential Claim" and expressly informed Pepper that it need not have given notice of the SFC circumstances in April 2002, now takes the position that Pepper gave notice in April 2004 of a "CLAIM" and that coverage can exist only under the 2003-04 Program (a period when Pepper had purchased less coverage from Westport). Westport alternatively argues that, if Pepper's April 2004 notice was notice of a "POTENTIAL CLAIM," the Continuous Coverage provision in the Westport policy is triggered and a highly fact-intensive inquiry must be undertaken to ascertain when Pepper first knew of the circumstances giving rise to the potential claim.

**Hartford:** Hartford takes the position that Pepper gave notice of a "POTENTIAL CLAIM" in April 2004, but asserts that Pepper was aware in April 2002 of the possibility of a claim and thus coverage that would otherwise attach under the 2003-04 Program is excluded by a prior knowledge exclusion

-4-

(despite the controlling "Continuous Coverage" provision in the primary Westport policy).  Hartford asserts that coverage can exist only under the 2001-02 Program (a period when Pepper had not yet purchased excess coverage from Hartford).

**ERII:**     ERII takes the same position as Hartford.

**CNA:**     CNA takes the position that Pepper engaged in fraud in connection with its renewal applications in the second and third years (even though CNA had no applications separate from the controlling Westport policy), and that coverage Pepper purchased from CNA cannot exist under either the 2001-02 Program or the 2003-04 Program.

Pepper served discovery requests on all four of its insurers.  While Westport provided some documents, the three excess insurers objected to discovery and moved for summary judgment.

While the insurers' motions for summary judgment were pending, Pepper was able to reach agreement in principle to settle the claims asserted against it and Gagné in the Underlying Actions.  As fate would have it, just hours after that settlement was reduced to a written agreement, the New York state court informed the parties of its ruling on the excess insurers' motions for summary judgment.  Without permitting essential discovery or so much as a single deposition, and without holding any evidentiary hearing, just seven weeks after the state court pleadings were closed the state court granted the excess insurers' summary judgment motions, stripping Pepper of at least $30 million in professional liability insurance coverage.

Within 30 days of entry, Pepper perfected an appeal to the Appellate Division, First Department.  That appeal is now fully briefed.  Argument in the Appellate Division is scheduled for Tuesday May 20, 2008.[4]

---

[4]     Should this Court wish to review them, Pepper will provide copies of the appellate briefs in the First Department.  Pepper expects that the Decision and Order will be reversed, the Judgment will be vacated, and the case will be remanded for discovery and trial.

The insurers agreed to fund Pepper's settlement of the Underlying Actions, re-serving rights to the return of their respective payments in the event that the Decision and Order is upheld. The Settlement of the Underlying Actions has since been fully consummated, and the Underlying Actions have been dismissed.

Without awaiting a ruling on appeal, ERII proceeded to file this direct action against Westport, claiming that as Pepper's primary insurer Westport owed to ERII the reim-bursement of ERII's contribution to Pepper's settlement of the Underlying Actions. ERII ini-tially filed this action in New York Supreme Court (New York County) and designated it as "re-lated" to the pending NY State Court Action. Defendant Westport removed the action to this Court, asserting subject matter jurisdiction in this Court based solely on alleged diversity of citi-zenship, 28 U.S.C. § 1332. Plaintiff ERII alleges that it is a Delaware corporation with its prin-cipal place of business in New Jersey. Defendant Westport alleges that it is a Missouri corpora-tion with its principal place of business in Kansas.

## ARGUMENT

**I.    Pursuant To The Exception Clause In The Federal Diversity Statute, 28 U.S.C. § 1332(c), This Court Currently Lacks Jurisdiction Over The Subject Matter Of This Action**

This action is a direct action by ERII against Pepper's primary insurer, Westport, seeking recovery under policies of liability insurance as to which Pepper is the insured. The fed-eral diversity statute, 28 U.S.C. § 1332(c)(1), provides:

> "(1) a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, ex-cept that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business[.]" (emphasis added)

Pursuant to the highlighted exception clause, the citizenship of Defendant Westport is deemed to include that of its insured, Pepper. Pepper is a partnership. Its citizenship for purposes of the federal diversity statute is that of the citizenship of each of its partners. *See Handelsman* v. *Bedford Village Assocs.*, 213 F.3d 48, 52 (2d Cir. 2000) (citing *Carden* v. *Arkoma Assocs.*, 494 U.S. 185 (1990)). As set forth in the accompanying Affidavit of Pepper's Executive Partner Robert E. Heideck, at all times relevant, partners of Pepper have resided in, among other states, Delaware and New Jersey.

ERII alleges that it is a Delaware corporation with its principal place of business in New Jersey. Pursuant to the federal diversity statute, ERII's citizenship is Delaware and New Jersey. Thus, there is not complete diversity of citizenship between Plaintiff ERII and Defendant Westport. Subject matter jurisdiction is lacking in this Court, and the case must be dismissed.[5]

Congress added the direct action exception clause in 28 U.S.C. § 1332(c)(1) to curtail the abuse of federal diversity jurisdiction under state direct-action statutes. "[T]he provision's stated purpose was to restrict . . . 'back-door diversity,' . . . by cloaking [a] non-resident insurer with the citizenship of its insured." *Elom* v. *Fidelity & Guaranty Insurance Co.*, 208 F. Supp. 2d 867, 869-70 (N.D. Ohio 2002) (citations and internal quotation marks omitted). *See Rosa* v. *Allstate Insurance Co.*, 981 F.2d 669, 672-73 (2d Cir. 1992) (describing the amendment

---

[5]    Federal courts are courts of limited jurisdiction. The absence of subject matter jurisdiction may be raised at any time, and by the Court *sua sponte*. Upon a determination that subject matter jurisdiction is lacking, the action must be dismissed. *D.B. Zwirn Special Opportunities Fund, L.P.* v. *Tama Broadcasting, Inc.*, No. 08 Civ. 3125, --- F. Supp. 2d -- --, 2008 WL 1862638, at *4 (S.D.N.Y. Apr. 28, 2008) ("Because jurisdiction goes to the issue of the court's power, a motion to remand based on lack of subject matter jurisdiction may be made at any time. Either a court has the power to adjudicate a case or it does not. Indeed, a federal court has an independent duty to determine that it has subject matter jurisdiction and may raise the issue *sua sponte*.") (citations omitted).

as a "direct response to a large number of . . . cases brought in the federal district courts in Lou-
isiana that '[did] not come within the spirit or the intent . . . of the diversity jurisdiction of the
Federal judicial system'") (citations omitted); *Webb* v. *Lumberman's Mutual Casualty Co.*, No.
01-CV-00770A, 2004 WL 1529239, at *2 (W.D.N.Y. July 2, 2004); *Saylab* v. *Hartford Mutual
Insurance Co.*, 271 F. Supp. 2d 112, 116 (D.D.C. 2003).

The Court of Appeals has defined the term "direct action" to include "those cases
in which a party suffering injuries or damage for which another is legally responsible is entitled
to bring suit against the other's liability insurer without joining the insured or first obtaining a
judgment against him." *Rosa*, 981 F.2d at 675.  In *Rosa*, the Court of Appeals reviewed the his-
tory of the "direct action" amendment and concluded that it is applicable whenever an insurer
"stands in the shoes of its legally responsible insured."  In the course of its review, the Court
noted that in many circumstances the amendment has been held to apply to contract actions
where those actions maintain the "essential feature of a tort 'direct action,'" because the insurer
has been substituted as a party-defendant for the legally responsible insured.  *Rosa*, 981 F.2d at
675 & 674 n.10.  That is precisely the situation presented here, in which ERII seeks the return of
funds it advanced on behalf of its insured, Pepper, pursuant to Pepper's other insurance policies.

Some courts have limited the definition of direct action to traditional tort claims.[6]
Others have applied § 1332(c)(1) to *any* direct claim against an insurer (whether arising in tort or

---

[6]    *See, e.g., R.L. Vallee, Inc.* v. *American International Specialty Lines Insurance Co.*, 431
F. Supp. 2d 428, 434 (D. Vt. 2006); *Corn* v. *Precision Contracting, Inc.*, 226 F. Supp. 2d
780, 783 (W.D.N.C. 2002); *Bass & Ullman, P.C.* v. *Government Employees Insurance
Co.*, No. 94 Civ. 3428, 1994 WL 584554, at *2 (S.D.N.Y. Oct. 24, 1994).

contract) that involves a risk of back-door diversity similar to the one first addressed in 1964.[7] The structure of this case reflects the exact abuse that § 1332(c)(1) was amended to prevent: ERII alleges no federal cause of action and has failed to join (non-diverse) Pepper as a party-defendant, seeking instead to recover directly from Westport for an alleged debt owed by Westport's insured. Westport improvidently removed this action to federal court. The action should be remanded, where it will be assigned as a related case to the pending NY State Court Action.

## II.   In The Event That This Court Finds That It Presently Has Jurisdiction Over The Subject Matter Of This Action, Pepper Is Entitled To Intervene As A Matter Of Right Under Rule 24(a)

Pepper is entitled to intervene as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure. Rule 24(a)(2) provides in relevant part that:

> "On timely motion, the Court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

---

[7] *See, e.g.*, *Elom*, 208 F. Supp. 2d at 870 ("In the Sixth Circuit's view, Congress, when it used the terms direct action and liability insurance in the amendment to § 1332(c), did not intend the amendment to apply only to traditional tort claims. . . . The term 'direct action' includes actions arising in contract as well as tort.") (citations and internal quotation marks omitted); *see also Scott* v. *Progressive Casualty Insurance Co.*, No. CV486-256, 1987 U.S. Dist. LEXIS 6198, at *2, *6 (S.D. Ga. June 29, 1987) ("The purpose of § 1332(c) is to decrease the burden on federal courts resulting from lawsuits brought by an injured third party directly against an out of state insurance company without joining the non-diverse insured as a defendant. . . . The mere fact that plaintiff's suit against the insurance company sounds in contract . . . does not make it any less a direct action within the meaning of § 1332(c)."); *All State Vehicles* v. *Allstate Insurance Co.*, 620 F. Supp. 444, 446 n.3 (S.D.N.Y. 1985) (dismissing assignee action for failure to allege required amount in controversy, but noting that the dispute "seem[ed] to call for the application of 28 U.S.C. § 1332(c), attributing the insured's citizenship to the insurer," because it was "an action directly against the insurer" that involved "essentially local issues," including "the application of state laws regarding insurance, torts, and contracts").

There are four requirements for intervention as of right under Rule 24(a)(2). The applicant must: (1) file a timely application; (2) demonstrate an interest in the action; (3) show an impairment arising from an unfavorable disposition; and (4) have an interest not otherwise protected by the parties. *See Brennan* v. *New York City Board of Education*, 260 F.3d 123, 128-29 (2d Cir. 2001). Pepper satisfies each requirement.

First, this application is timely. This action has just begun. No substantive proceedings have occurred.

Second, Pepper has an important and significant interest in this action. Certainly the insured has an interest not otherwise protected by insurers who both disclaim coverage when it is the insured's coverage that is the subject of the action. Even if the outcome of this litigation is simply a determination that one policy period governs and another does not, the difference to Pepper is $10 million in insurance coverage.

Third, Pepper will suffer impairment from an unfavorable disposition of this action. It is Pepper's insurance coverage that is being litigated and neither ERII nor Westport is correct in the positions they articulate.

Fourth, neither ERII nor Westport has Pepper's interests at heart. Both disclaim coverage. ERII Complaint ¶ 2; Westport Answer pp. 11-15. If the two of them could figure out a way that no policy covered Pepper in respect of the Underlying Actions they undoubtedly would be pleased to agree to such an outcome.

## III.    This Action Should Be Dismissed Pursuant to Rule 19(b) Because Pepper Is An Indispensable Party And Its Presence In This Action Destroys Subject Matter Jurisdiction

Federal Rule of Civil Procedure 19 sets forth a two step test in determining whether the court must dismiss an action for failure to join an indispensable party. First, the court must determine whether an absent party is a "necessary" party under Rule 19(a). If the

party is necessary, then the court shall join that party if such joinder "will not deprive the court

of subject-matter jurisdiction." If the joinder of the party would deprive the Court of subject

matter jurisdiction, then it must determine whether such party is "indispensable" pursuant to

Rule 19(b). If the party is indispensable, the case must be dismissed.

### A.    Pepper Is A "Necessary" Party Pursuant to Rule 19(a)

Rule 19(a) states that a party is necessary to an action where that "person claims

an interest relating to the subject of the action and is so situated that disposing of the action in the

person's absence may: (i) as a practical matter impair or impede the person's ability to protect

the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multi-

ple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a).

As explained above, the crux of the dispute between ERII and Westport involves

which of Pepper's insurance programs applies. Even if ERII and Westport agreed that one or the

other applied (the 2001-02 Program or the 2003-04 Program), there is still a $10 million differ-

ence to Pepper which could result if this Court makes that determination. Pepper is a necessary

party under Rule 19(a). *See Shimkin* v. *Tompkins, McGuire, Wachenfeld & Barry*, No. 02 Civ.

9731, 2003 WL 21964959, at *4 (S.D.N.Y. Aug. 19, 2003) (Cote, J.) ("If the resolution of the

plaintiff's claim would require the definition of a non-party's rights under a contract, 'it is likely'

that the nonparty is necessary under Rule 19(a).") (citing *Jonesfilm* v. *Lion Gate International*,

299 F.3d 134, 141 (2d Cir. 2002)).

### B.    Pepper's Joinder Is Not "Feasible" Because It Would Destroy Diversity And Deprive The Court Of Subject Matter Jurisdiction

Once a court makes the threshold determination that a party is necessary under

Rule 19(a), and "joinder of the absent party is not feasible for jurisdictional or other reasons, the

court must then determine whether the party is 'indispensable' under Rule 19(b)." *Shimkin*, 2003

WL 21964959, at *4. Here, Pepper's joinder would destroy diversity. Complete diversity is required for the court to have subject matter jurisdiction pursuant to 28 U.S.C. § 1332. *See Exxon Mobil Corp.* v. *Allapattah Services, Inc.*, 545 U.S. 546, 553-54 (2005) (reaffirming that the Court "has adhered to the complete diversity rule in light of the purpose of the diversity requirement, which is to provide a federal forum for important disputes where state courts might favor, or be perceived as favoring, home-state litigants. The presence of parties from the same State on both sides of a case dispels this concern, eliminating a principal reason for conferring § 1332 jurisdiction over any of the claims in the action."). ERII alleges that it is a Delaware corporation whose principal place of business is New Jersey. ERII Complaint ¶ 5. Pepper is a limited liability partnership which had partners in each of those two states at the time the action was filed, and presently. Heideck Affidavit ¶ 2. Because the citizenship of a limited liability partnership is determined by the citizenship of each of its partners, *Handelsman, supra,* the presence of Pepper in this action as a defendant destroys diversity.[8] Because Pepper's joinder would destroy diversity, joinder is not "feasible" pursuant to Rule 19(a), and the court must then conduct a Rule 19(b) analysis to determine whether Pepper is an indispensable party

---

[8]    Pepper should not be realigned along side ERII in this action. The true alignment of the parties in this action is Pepper, the insured, as plaintiff and ERII and Westport, the insurers, together as defendants with cross-claims between them. This reflects the actual adversity of the parties. *See Indianapolis* v. *Chase National Bank,* 314 U.S. 63, 69 (1941) ("Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty . . . to 'look beyond the pleadings, and arrange the parties according to their sides in the dispute.' Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary 'collision of interest,' exists, is therefore not to be determined by mechanical rules. It must be ascertained from the 'principal purpose of the suit,' and the 'primary and controlling matter in dispute.'"). The Second Circuit has adopted the "collision of interests" test. *See Maryland Casualty Co.* v. *W.R. Grace and Co.*, 23 F.3d 617 (2d Cir. 1994).

**C.     Pepper is an "Indispensable" Party Under Rule 19(b), Requiring the Dismissal of This Action**

A Rule 19(b) analysis requires courts to consider (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.  Each of these factors supports a finding that Pepper is indispensable to this action.

First, a judgment by this Court in Pepper's absence would substantially affect Pepper's rights and erode Pepper's ability to defend the NY State Court Action.  That action involves identical questions of fact regarding the policies at issue here.  For example:

- ERII contends that the Continuous Coverage provision requires that the Underlying Actions be deemed a "CLAIM" or "POTENTIAL CLAIM" first made and reported during the 2001-2002 Program (ERII Complaint ¶¶ 34, 50), while Westport asserts on appeal that Pepper's notice in 2004 constituted notice of a "CLAIM" under the 2003-2004 Program.  CNA takes a position contrary to that asserted in ERII's Complaint, arguing that the SFC matter could not be a "CLAIM" made during the 2001-2002 policy period because Pepper did not provide notice to the insurers until after the 2001-2002 policy had expired.

- ERII alleges that "Pepper provided Westport with written notice of a POTENTIAL CLAIM" in April 2004 (ERII Complaint ¶ 36), while Westport takes the position on appeal "that Pepper's receipt of a tolling agreement in 2004 constituted a 'claim' and therefore Pepper's first notice to its insurers was of a 'claim,' not merely a 'potential claim.'"

- ERII's assertion that Pepper's coverage "was renewed continuously and without interruption during all relevant times" (ERII Complaint ¶ 47), directly contradicts CNA's position that it did not issue continuous and uninterrupted coverage during the relevant policy periods.

As a result of this overlap, any determination in this action would necessarily define Pepper's rights under the disputed policies and limit Pepper's ability to establish coverage

by its insurers in the state court action. Given this dynamic, the instant action cannot proceed in equity and good conscience without Pepper. *See Shimkin*, 2003 WL 21964959, at *5 ("This action must be dismissed since the [absent parties] are indispensable parties. . . . [A]ny judgment rendered in this action would substantially erode [their] ability to protect their interests under the [disputed agreements], since a judgment would have to define their rights under these agreements.") (emphasis added); *Picciotto* v. *Continental Casualty Co.*, 512 F.3d 9 (1st Cir. 2008) (affirming dismissal of diversity action against defendant malpractice insurers where plaintiffs failed to join absent attorney, and emphasizing that an adverse judgment would almost certainly prejudice the absent attorney's interest in settling pending state law claims against her and retaining coverage from the defendant insurers).

　　*American Home Assurance Co.* v. *Babcock & Wilcox Co.*, No. 06-CV-6506, 2007 WL 4299847, at *4-*5 (E.D.N.Y. Dec. 6, 2007) is directly on point. It involved an action brought by an insurer seeking a declaration that it was not liable on an excess liability policy. The court determined that a co-insurer and assignee beneficiary were indispensable parties and dismissed the case, noting that the absent coinsurer had "an interest in the subject of the action," because the Court's "determination of whether the insurance policy is valid, and whether the incident at issue is covered by the policy, could impede [the coinsurer]'s ability to defend" a pending state court lawsuit. The court further noted that the absent assignee "has an interest in this Court's determination as to whether there is coverage under the insurance policy or whether the policy is void," explaining that "[s]hould this Court determine that the policy is not valid, or that the incident at issue is not covered by the policy, the assignee of the $50 million insurance payments will not be able to collect that payment." The Court then concluded that its disposition of

-14-

the action might "as a practical matter impair or impede [the assignee]'s ability to protect [its] interest" and dismissed for non-joinder accordingly. *Id.*

The analysis in *American Home* is consistent with established Rule 19(b) case law. *See Guthrie Clinic, Ltd.* v. *Travelers Indemnity Co.*, 104 Fed. Appx. 218, 2004 WL 1465688, at *4 (3d Cir. 2004) (affirming dismissal of diversity action for declaratory relief where plaintiff insured failed to join non-diverse broker responsible for securing the disputed policy, and noting that the interest of the absent broker was "great" because of the specific allegations against it in the complaint against which it could not defend); *Sta-Rite Industries, Inc.* v. *Allstate Insurance Co.*, 96 F.3d 281, 285-86 (7th Cir. 1996) (affirming dismissal of declaratory judgment action where plaintiff insureds refrained from naming fourth, non-diverse insurer in order to pre-serve diversity) ("To resolve these issues without Wausau, the issuer of 15 years of primary and excess coverage, would prejudice all the insurers, including Wausau. A judgment rendered in Wausau's absence would require duplicative litigation, and result in prejudice to both Wausau and the other insurers. Nor could full and complete relief be afforded without Wausau. And in the parallel state court action, the [state court] can grant complete relief in one action to all ap-propriate parties . . . .").

Second, it is not possible for this Court to reduce or avoid prejudice to Pepper in the NY State Court Action by shaping its relief. The prejudice at issue here arises from Pepper's inability to protect its rights under the policies due to the outcome of this litigation itself, rather than the specific terms of any future judgment. *See Shimkin*, 2003 WL 21964959, at *5 (noting that equity and good conscience required dismissal where prejudice to absent agreement parties could not be reduced by protective provisions in the judgment, the shaping of relief or any other measures because "[t]he prejudice [arose] from the inability of the [absent parties] to protect

their rights under the respective agreements"); *Picciotto*, 512 F.3d at 18 (approving the district court's conclusion that "'it would be difficult if not impossible . . . to shape relief that would not implicate [the absent attorney's] interests'") ("Given the prejudice that the [district] court identified (the impact on a potential settlement of the state law claims and the potential loss of insurance coverage), we agree that there is no . . . protective approach possible because the prejudice to [the attorney] would result from the potential outcome of the litigation itself, not the specific terms of any judgment.").

The third prong of Rule 19(b)'s analysis, whether a judgment rendered in the party's absence would be adequate, "extends beyond the issue of whether relief could be shaped that would satisfy the parties." It also encompasses 'the interest of the courts and the public in complete, consistent, and efficient settlement of controversies.'" *Picciotto*, 512 F.3d at 18. Where, as here, "the striking similarity between the claims in [a federal case] against the insurance companies and the claims against [an absent party] and others in the state court litigation 'demonstrates the availability of an alternative forum and the efficiency of litigating the entire case in state court,'" Rule 19(b) weighs in favor of finding indispensability. *Id.* at 19.

Finally, ERII can obtain adequate relief in the NY State Court Action if this action is dismissed. Since dismissal of this action will not prevent ERII from obtaining the declaration it now seeks, the Court may fairly conclude that Pepper is indispensable to this action and dismiss for non-joinder. *See Shimkin*, 2003 WL 21964959, at *5 (emphasizing Plaintiff's ability to obtain the remedies he seeks in a state court following dismissal); *Sta-Rite*, 96 F.3d at 286 ("[T]he ongoing state action in which all parties and issues are before one court demonstrates that an adequate (indeed, likely better) remedy is available in another venue."); *Uni Storebrand Insurance Co.* v. *Star Terminal Corp.*, 96 Civ. 9556, 1997 U.S. Dist. LEXIS 9906, at *16

(S.D.N.Y. July 10, 1997) (Cote, J.) (dismissing insurer's declaratory judgment action against insured for failure to join non-diverse third-party claimant where adequate remedy existed in New York state court following dismissal for non-joinder).[9]

## CONCLUSION

This action was improvidently removed from state court. This Court lacks jurisdiction over the subject matter of this action. The action should be remanded to state court where it will be consolidated with the presently pending action between the same parties.

Alternatively, Pepper should be allowed to intervene of right, and the Court should find Pepper to be an indispensable party, in which case because Pepper's joinder would destroy diversity jurisdiction the action should be dismissed.

Dated:  May 16, 2008

CAHILL GORDON & REINDEL LLP

BY: *Charles A. Gilman*

Charles A. Gilman
David G. Montone
Eighty Pine Street
New York, New York 10005
(212) 701-3000

*Attorneys for Pepper Hamilton LLP*

---

[9]  This Court is not permitted to exercise supplemental jurisdiction over the claims. *See Merrill Lynch & Co.* v. *Allegheny Energy, Inc.*, 500 F.3d 171, 178-79 (2d Cir. 2007) ("The Supreme Court ruled in *Exxon* that the assertion by a single diverse plaintiff of a claim that satisfies the jurisdictional requirements of 28 U.S.C. § 1332 is a civil action over which a district court may take original jurisdiction. Once jurisdiction is anchored, § 1367(a) permits the exercise of supplemental jurisdiction over claims asserted by additional diverse plaintiffs, whether or not such claims meet the amount-in-controversy requirement, unless jurisdiction is barred by § 1367(b). *Exxon* makes clear that its expansive interpretation of § 1367 does not extend to additional parties whose presence defeats diversity.") (citations omitted; emphasis added).