UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| PEPPER HAMILTON LLP, <br><br>       Intervenor <br>       Plaintiff, <br><br>       v. <br><br>WESTPORT INSURANCE CORPORATION <br>AND EXECUTIVE RISK INDEMNITY, INC., <br><br>       Defendants. | Case No. 08 CV 01822 (DLC) |

### AFFIDAVIT OF CHARLES A. GILMAN

STATE OF NEW YORK   )
                               :ss.:
COUNTY OF NEW YORK  )

        CHARLES A. GILMAN, being duly sworn, deposes and says:

        1.     I am a member of the New York bar and of the firm of Cahill Gordon & Reindel LLP, attorneys for Pepper Hamilton LLP ("Pepper"). I make this affidavit upon personal knowledge and to place before this Court documents in support of Pepper's Motion to Intervene and to Dismiss.

        2.     Attached hereto as Exhibit 1 is a true and correct copy of Pepper's Complaint in Intervention.

                                                               _/s/ Charles A. Gilman_
                                                                  Charles A. Gilman

Sworn to before me this
16th day of May, 2008

_/s/ Nicole Delutri_
Notary Public

NICOLE DELUTRI
Notary Public, State of New York
No. 01DE6160981
Qualified in Richmond County
Commission Expires Feb. 12, 2011

Exhibit 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEPPER HAMILTON LLP,<br><br>　　　　Intervenor Plaintiff,<br><br>　　　　v.<br><br>WESTPORT INSURANCE CORPORATION<br>AND EXECUTIVE RISK INDEMNITY, INC.,<br><br>　　　　Defendants. | Case No. 08 CV 01822 (DLC)<br><br>**Complaint In Intervention** |

Intervenor Plaintiff Pepper Hamilton LLP ("Pepper"), by its undersigned attorneys, for its Complaint in Intervention against Westport Insurance Corporation ("Westport") and Executive Risk Indemnity, Inc. ("ERII"), alleges as follows.

**Preliminary Statement**

1. This is an action for declaratory judgment to determine an actual controversy between Pepper on the one hand and Westport and ERII on the other. Pepper intervenes in this action to protect its interests, and seeks a realignment of the parties and a declaration that Westport and ERII are obligated to defend and indemnify Pepper pursuant to the terms of certain professional liability insurance policies they sold to Pepper.

**The Parties**

2. Pepper is a law firm organized as a Pennsylvania Limited Liability Partnership. At all times relevant to this dispute, including at the time this lawsuit was filed in state court and at the time of its removal to this Court, Pepper has had partners who reside, in among other places, in Delaware and New Jersey. W. Roderick Gagné ("Gagné") a partner at Pepper at all time relevant to this dispute, was the principal partner in the relationship with a client named Student Finance Corporation ("SFC").

3. Upon information and belief, during all relevant time periods, including at the time of the filing of this action in state court and at the time of its removal to this Court, ERII has been a corporation organized under the laws of the State of Delaware with its principal place of business in the State of New Jersey.

4. Upon information and belief, during all relevant time periods, including at the time of the filing of this action in state court and at the time of its removal to this Court, Westport has been a corporation organized under the laws of the State of Missouri with its principal place of business in the State of Kansas.

### The Insurance Policies

5. Pepper has purchased professional liability insurance from Defendants Westport and ERII, as well as from Continental Casualty Company ("CNA") and Twin City Fire Insurance Company ("Hartford").

6. From April 27, 2001 through October 27, 2002 (the "2001-02 Program"), Pepper purchased $50 million in professional liability coverage: a $20 million primary policy from Westport and a $30 million excess policy from CNA. From October 27, 2002 through October 27, 2003 (the "2002-03 Program"), Pepper purchased $40 million in coverage: a $10 million primary layer from Westport, and a tower of three excess layers of $10 million each from Hartford, ERII and CNA. From October 27, 2003 through October 27, 2004 (the "2003-04 Program"), Pepper purchased $40 million in coverage: a $10 million primary layer from Westport, and a tower of three excess layers of $10 million each from Hartford, ERII and CNA.

7. In all years, the primary Westport policies contain a "Continuous Coverage" clause, incorporated into all of the "following form" excess policies issued by Hartford, ERII and CNA, that states:

> "If, during this POLICY PERIOD, any INSURED provides written notice to the Company of a POTENTIAL CLAIM which any INSURED first became aware of during the period of a prior policy issued by the Company to the NAMED INSURED, which policy was Renewed continuously and without interruption

through the inception of this POLICY, then any CLAIMS subsequently made against any INSURED arising from the POTENTIAL CLAIM shall be considered to have been first made and reported during the POLICY PERIOD of the policy in effect when any INSURED first became aware of such POTENTIAL CLAIM subject to the terms, conditions and limits of liability of the policy in effect at such time."

8. The evident purpose and effect of this provision is to obviate the possibility that an insurer and its insured ever have a dispute over the timing of notice of a potential claim so long as the insured continues to renew its policies with that insurer.

9. The Westport policy contains a related provision, also incorporated into all of the follow form excess policies, which recognized the possibility that notice of a known potential claim might be given in a subsequent policy period:

"If, during the POLICY PERIOD, any INSURED first becomes aware of a POTENTIAL CLAIM and gives written notice of such POTENTIAL CLAIM to the Company during the POLICY PERIOD, or any other subsequent POLICY PERIOD as a result of continuous and uninterrupted coverage with the Company, any CLAIMS subsequently made against any INSURED arising from the POTENTIAL CLAIM shall be considered to have been made during the POLICY PERIOD."

10. The primary Westport policy defines a POTENTIAL CLAIM as: "1. any act, error, omission, circumstance or PERSONAL INJURY which might reasonably be expected to give rise to a CLAIM against any INSURED under the POLICY; or 2. any breach of duty to a client or third party which has not resulted in a CLAIM against the INSURED."

11. The primary Westport policy defines a CLAIM as "a demand made upon any INSURED for LOSS . . . including, but not limited to, service of suit or institution of arbitration proceedings or administrative proceedings against any INSURED."

### The Underlying Actions

12. Pepper resigned its representation of SFC in April 2002 (during the 2001-02 Program), after SFC disclosed that it had engaged in certain accounting irregularities. SFC was subsequently placed in bankruptcy.

13. No claims had been asserted against Pepper in connection with its representation of SFC, and Pepper had no reason to believe that it had breached any professional duty to SFC or that it might be sued for legal malpractice. Indeed, Pepper substantially reduced the total amount of its professional liability insurance coverage from $50 million to $40 million.

14. Two years later, in mid-April 2004, Pepper received a communication from SFC's bankruptcy Trustee requesting that Pepper agree to a tolling agreement so that the Trustee could consider whether or not to assert claims against Pepper. This was the first notice that Pepper received that a claim might be asserted against it.

15. Pepper promptly gave notice to its insurers of a POTENTIAL CLAIM by the Trustee. By letter dated April 23, 2004, Westport acknowledged receipt of notice of the potential claim, and determined that coverage lay under the 2003-2004 Program.

16. On November 1, 2004, a lawsuit styled *Charles A. Stanziale, Jr., as Chapter 7 Trustee of Student Finance Corporation v. Pepper Hamilton LLP, et al.*, U.S.B.C. Dist. of Del., No. 02-1120-JBR (the "*Stanziale* Action") was filed against Pepper and Gagné in Delaware Bankruptcy Court alleging that Pepper was liable to SFC and its creditors for losses stemming out of an alleged breach of fiduciary duty and legal malpractice. Pepper promptly notified its insurers.

17. On March 18, 2005, a lawsuit captioned *Royal Indemnity Co. v. Pepper Hamilton LLP, et al.*, U.S.D.C. Dist. of Del., No. 05-165 (the "*Royal* Action"), was filed against Pepper and Gagné in Federal District Court in Delaware. The *Royal* Action sought recovery of the amount Royal was required to pay under its credit risk policies issued to SFC and alleged that Pepper breached its duty in the rendition of professional services. Pepper promptly notified its insurers.

18.     Claims asserted in the *Stanziale* Action and the *Royal* Action (together, the "Underlying Actions") are covered by the terms of the Westport and ERII policies. The plaintiffs in the Underlying Actions sought substantial money damages against Pepper.

### The Existing State Court Coverage Action

19.     On October 12, 2005 ERII brought an action in Supreme Court of the State of New York, New York County (the "State Court"), seeking a declaration that it has no obligation under its excess policies to defend and indemnify Pepper and Gagné in connection with the Underlying Actions. Prior to any activity in the case, by Order of the New York State Supreme Court, the action was stayed. Nothing by way of pretrial proceedings took place until the stay was lifted in January 2007.

20.     On February 14, 2007, Pepper and Gagné asserted counterclaims against ERII for breach of contract, and on March 2, 2007, Pepper and Gagné commenced a third-party action against Hartford and CNA, seeking a declaration of those insurers' obligations. Hartford counterclaimed for a declaration that it is not obligated to provide coverage under its policies. CNA counterclaimed for rescission of its policies.

21.     Harford, ERII and CNA each moved for summary judgment against Pepper. Westport, whose primary policy controlled, did not move for summary judgment. While the excess insurers' motions for summary judgment were pending, Pepper and Gagné reached an agreement in principle to settle all claims asserted against it and Gagné in the Underlying Actions (the "Settlement").

22.     Without permitting essential discovery or holding an evidentiary hearing, just seven weeks after the pleadings were closed, the court granted the excess insurers' summary judgment motions (the "Decision and Order"). Claims as between Pepper and Gagné and Westport remain undecided and pending in the State Court. Pepper and Gagné have appealed to the

Appellate Division, First Department, which appeal is fully briefed and argument scheduled for May 20, 2008.

23. Although the decision in the coverage action was handed down prior to the consummation of the settlement of the Underlying Actions, the insurers nonetheless agreed to fund payments made by Pepper under the Settlement, subject to their reservation of the right to the return of their respective payments in the event that the Decision and Order is upheld by the Appellate Division. The settlement of the Underlying Actions has since been fully consummated, and the Underlying Actions actions have been dismissed.

### The Instant Lawsuit

24. Upon information and belief, the instant action was originally filed in New York State Supreme Court and designated as a "related action" to that already-pending case involving these same parties. In this action, ERII seeks the return from Westport of $10 million advanced by ERII to fund the Settlement, on the theory that the 2001-2002 Program applies, at which time ERII was not on risk. Westport has answered with a battery of defenses, which boil down to an assertion of no coverage *vis a vis* Pepper and Gagné.

### <u>COUNT ONE</u>
### (Declaratory Judgment Against Westport)

25. Pepper repeats and realleges paragraphs 1 through 26 of its allegations as if fully set forth herein.

26. By its actions, Pepper complied with all the terms and conditions precedent to coverage under the 2001-2002, 2002-2003 and 2003-2004 Westport policies.

27. A genuine and justiciable controversy exists between Pepper and Westport as to which policy period applies to the Underlying Actions.

28. Pepper is entitled to a declaration that Westport must defend and indemnify Pepper in connection with the Underlying Actions under the terms and conditions of either its 2003-

2004, or alternatively under its 2001-2002, insurance policies, including without limitation that Westport must fund the Settlement.

## COUNT TWO
### (Declaratory Judgment Against ERII)

29. Pepper repeats and realleges paragraphs 1 through 30 of its allegations as if fully set forth herein.

30. By its actions, Pepper complied with all the terms and conditions precedent to coverage under the 2002-2003 and 2003-2004 ERII policy.

31. A genuine and justiciable controversy exists between Pepper and ERII as to which policy period applies to the Underlying Actions.

32. Pepper is entitled to a declaration that ERII must defend and indemnify Pepper in connection with the Underlying Actions pursuant to the terms and conditions of its 2003-2004 insurance policy, including without limitation that ERII must fund the Settlement.

WHEREFORE, Pepper demands judgment against Westport and ERII herein as follows:

  a. On its First Count, a declaration that Westport is obligated to pay in full its portion of the costs of Pepper's Settlement of the Underlying Actions;

  b. On its Second Count, a declaration that ERII is obligated to pay in full its portion of the costs of Pepper's Settlement of the Underlying Actions;

  c. Pre- and post-judgment interest at the rate specified by law; and

  d. Such other and further relief as this Court deems just and proper.

Dated: New York, New York
   May 16, 2008

              CAHILL GORDON & REINDEL LLP

            BY: *[signature]*
              Charles A. Gilman
              David G. Montone
            Eighty Pine Street
            New York, New York 10005
            (212) 701-3000
            *Attorneys for Pepper Hamilton LLP*