UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEPPER HAMILTON LLP,  <br><br>Intervenor Plaintiff,  <br><br>v.  <br><br>WESTPORT INSURANCE CORPORATION AND EXECUTIVE RISK INDEMNITY, INC.,  <br><br>Defendants. | Case No. 08 CV 01822 (DLC) |

**REPLY MEMORANDUM OF LAW OF PEPPER HAMILTON LLP IN FURTHER SUPPORT OF ITS SUGGESTION OF LACK OF SUBJECT MATTER JURISDICTION AND, ALTERNATIVELY, ITS MOTION TO INTERVENE AND TO DISMISS**

CAHILL GORDON & REINDEL LLP
Charles A. Gilman
David G. Montone
Eighty Pine Street
New York, New York 10005
(212) 701-3000
*Attorneys for Pepper Hamilton LLP*

June 13, 2008

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

I. ERII HAS BROUGHT A DIRECT ACTION WITHIN THE MEANING OF 28 U.S.C. § 1332(c)(1) .......................................................................................................... 2

II. PEPPER IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT ............................. 5

III. THIS ACTION SHOULD BE DISMISSED PURSUANT TO RULE 19 .............................. 7

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*All State Vehicles* v. *Allstate Insurance Co.*, 620 F. Supp. 444 (S.D.N.Y. 1985) ........................................................................................................ 4

*American Home Assurance Co.* v. *Babcock & Wilcox Co.*, 2007 WL 4299847 (E.D.N.Y. Dec. 6, 2007) ................................................................. 8-9

*Blake* v. *National Casualty Co.*, 607 F. Supp. 189 (C.D. Cal. 1984) ............... 4

*Brennan* v. *New York City Board of Education*, 260 F.3d 123 (2d Cir. 2001) ................................................................................................................. 5

*Elom* v. *Fidelity & Guaranty Insurance Co.*, 208 F. Supp. 2d 867 (N.D. Ohio 2002) ....................................................................................................... 4

*Hartford Fire Insurance Co.* v. *Mitlof*, 193 F.R.D. 154 (S.D.N.Y. 2000) ....... 6

*Herman* v. *Raska*, 1998 WL 214787 (S.D.N.Y. Apr. 30, 1998) ..................... 6

*Indiana Gas Co.* v. *Home Insurance Co.*, 141 F.3d 314 (7th Cir. 1998) ........ 2

*Indianapolis* v. *Chase National Bank*, 314 U.S. 63 (1941) ........................... 7

*ING. Hoschek Autoverleich GES.M.B.H.* v. *Balag, Ltd.*, 1994 WL 701989 (S.D.N.Y. Dec. 14, 1994) .................................................................... 9

*Klamath Irrigation District* v. *United States*, 64 Fed. Cl. 328 (2005) .......... 6n

*Maricco* v. *Meco Corp.*, 316 F. Supp. 2d 524 (E.D. Mich. 2004) ................. 6n, 7

*Maryland Casualty Co.* v. *W.R. Grace & Co.*, 23 F.3d 617 (2d Cir. 1993) .... 7

*National Athletic Sportswear, Inc.* v. *Westfield Insurance Co.*, 2008 WL 2345019 (7th Cir. June 10, 2008) ................................................................. 3

*Oneida Indian Nation* v. *State of New York*, 732 F.2d 261 (2d Cir. 1984) ... 5-6

*Pereira* v. *National Union Fire Insurance Co. of Pittsburgh, PA*, 2006 WL 1982789 (S.D.N.Y. July 12, 2006) ........................................................ 6

*Picciotto* v. *Continental Casualty Co.*, 512 F.3d 9 (1st Cir. 2008) ............... 10

*Republic of the Philippines* v. *Pimentel*, --- S. Ct. ----, 2008 WL 2369068, at *13 (U.S. June 12, 2008) ......................................................................... 10

*Rosa* v. *Allstate Insurance Co.*, 981 F.2d 669 (2d Cir. 1992) .................................. 3

*Scott* v. *Progressive Casualty Insurance Co.*, 1987 U.S. Dist. LEXIS 6198 (S.D. Ga. June 29, 1987) .................................. 4

*Shimkin* v. *Tompkins, McGuire, Wachenfeld & Barry*, 2003 WL 21964959 (S.D.N.Y. Aug. 19, 2003) .................................. 8

*Spiro* v. *Parker Bros.*, 1992 WL 197405 (S.D.N.Y. Aug. 4, 1992) .................................. 9

*United States Postal Service* v. *Brennan*, 579 F.2d 188 (2d Cir. 1978) .................................. 6

**Rules**

Fed. R. Civ. P.

| | |
|---|---|
| 19(a) .................................. | 7-8 |
| 19(b) .................................. | 8-10 |
| 24(a)(2) .................................. | 6n |

**Statutes**

Judicial Code

| | |
|---|---|
| 28 U.S.C. § 1332(c) (2000), as amended .................................. | 3-4 |
| 28 U.S.C. § 1332(c)(1) (2000), as amended .................................. | 2-5 |

## **INTRODUCTION**

This Reply Memorandum is submitted on behalf of Pepper Hamilton LLP ("Pepper") in further support of its suggestion of lack of subject matter jurisdiction and in response to the opposition of Executive Risk Indemnity, Inc. ("ERII").

ERII filed this case against Westport Insurance Corporation ("Westport") in New York state court, and designated it as "related" to an already-pending case involving these same parties. The action was removed to this Court by Westport. Having now considered Pepper's motion, Westport concedes that its removal of the action from state court was not appropriate, and does not oppose Pepper's motion to dismiss the action for lack of subject matter jurisdiction, or alternatively to remand it back to state court, where it belongs.

"ERII admits that it would have an adequate remedy if this action were . . . remanded to State court" (ERII Opp. Br. at 16), but fights to maintain this unnecessary and duplicative action. Pepper will not speculate as to why ERII prefers to have its case heard in this forum instead of in state court, because the reasons do not matter. Nor will Pepper point out each of the factual inaccuracies in ERII's submission, because those do not matter either.[1] ERII's opposition is without merit. The Court lacks jurisdiction over the subject matter of this action.[2]

---

[1]   For example, it is simply not true that Pepper agreed to forego essential discovery (not a single deposition and no third party discovery was conducted), and tender its professional liability insurance coverage for judicial determination just seven weeks after the pleadings were closed.

[2]   ERII's opposition hinges on the maintenance of the status quo in the pending New York state court action. That is not likely for very long. On May 20, 2008, the Appellate Division, First Department, heard Pepper's expedited appeal of the Decision & Order granting summary judgment to its excess professional liability insurers. In a court where, if allowed, oral argument is usually restricted to just a very few minutes, the panel heard approximately one hour of oral argument. We do not often venture predictions as to the outcome of pending matters. But here we are confident that the decision stripping Pepper of at least $30 million in professional liability insurance was infected with reversible error. Pepper expects the Decision & Order will be reversed, the Judgment vacated, and the case remanded for discovery and trial.

# I.

## ERII HAS BROUGHT A DIRECT ACTION WITHIN THE MEANING OF 28 U.S.C. § 1332(c)(1)

ERII alleges that it "agreed to advance its $10 million limits under its 2003 policy to Pepper and Gagne, subject to a reservation of rights, in order to assist Pepper in funding its settlement of the Underlying Actions." (ERII Complaint ¶ 44) The funds, initially paid by ERII into an escrow account on behalf of both Pepper and Gagne, who agreed to the return of the payment under certain conditions, have since been disbursed as part of the settlement.

In this action, ERII sues Westport seeking repayment of the money ERII "advanced to Pepper and Gagne." (ERII Complaint ¶¶ 3-4) ERII does not allege any wrongdoing by Westport to it. Rather, the basis of ERII's claim is that Westport owes Pepper and Gagne "under its 2001 policy." (ERII Complaint ¶¶ 3-4) ERII claims that Westport "should have advanced Pepper and Gagne the funds necessary to settle the Underlying Actions." (ERII Complaint ¶ 45)

In other words, rather than pursue Pepper and Gagne for repayment of the money advanced pursuant to and subject to the terms of the agreement to make that advancement, ERII has brought a direct action against their insurer, Westport, predicated on Westport's insurance obligations to Pepper and Gagne. The exception in 28 U.S.C. § 1332(c)(1) is "a special rule for insurers in 'direct actions' -- that is, cases in which a person with a claim against the insured sues the insurer directly." *Indiana Gas Co.* v. *Home Insurance Co.*, 141 F.3d 314, 317 (7th Cir. 1998). That is exactly what ERII is attempting to do in this case -- sue Pepper's insurer for a debt allegedly owed to ERII by Pepper.

We are not aware of any case postured as that now before this Court that has failed to apply the direct action exception in § 1332(c)(1). Those cases that have rejected appli-

cation of the direct action exception have done so in situations far different than that here presented. *See, e.g., National Athletic Sportswear, Inc. v. Westfield Insurance Co.*, 2008 WL 2345019, at *2 n.1 (7th Cir. June 10, 2008) ("This is a case of the insured suing the insurer and thus is not a direct action. . . .").

ERII tries to obscure this posture by arguing that it is "settled law in this Circuit that ERII's complaint does not assert a direct action claim." (ERII Opp. Br. at 10) That is not so. *Rosa v. Allstate Insurance Co.*, 981 F.2d 669, 670, 673 (2d Cir. 1992), addressed the narrow question "whether the § 1332(c) proviso applies to a claim brought by an injured third-party under a no-fault insurance contract." The court based its conclusion that actions brought under New York's "no fault law" are not direct actions on how "the configuration of the parties in a no-fault action, realistically viewed, differs substantially from the 'direct action' scenario" in which, as here, an insurer essentially "stands in the shoes of its legally responsible insured." *Rosa*, 981 F.2d at 677.

Facing liability, ERII voluntarily tendered $10 million to Pepper and Gagne to assist in settling the Underlying Actions. No court order compelled ERII to advance the funds, and ERII did so based solely upon its insurance contract with Pepper. The conditions of that advance, including possible repayment, are set forth in an agreement between ERII and Pepper. Instead of pursuing Pepper and Gagne at this time to recover the money that it advanced, ERII has instead chosen to file a direct action against Westport because Westport is Pepper's and Gagne's insurer, not because of any "independent wrongful actions." (ERII Opp. Br. at 12) ERII concedes that it is bringing an action directly against Westport to enforce "a responsibility Westport owed to Pepper." (ERII Opp. Br. at 10) That is the definition of a direct action within the meaning of § 1332(c)(1).

ERII ignores *Rosa*'s discussion of cases that refused to limit the direct action exception to traditional tort claims, *Rosa*, 981 F.2d at 674 n.10, and decisions from three different courts that support a broader application of § 1332(c)(1). See ERII Opp. Br. at 12 n.*:

- ERII dismisses this Court's comment in *All State Vehicles* v. *Allstate Insurance Co.* that, although an injured tort victim's action for bad-faith settlement of its claims against the insured "is distinguishable from the 'direct actions' which led to the enactment of the proviso in § 1332(c), the need to limit access to federal courts based on the fortuity of a national insurance company's state of incorporation and principal place of business is still implicated," 620 F. Supp. 444, 446 n.3 (S.D.N.Y. 1985);

- ERII asserts that *Elom* v. *Fidelity & Guaranty Insurance Co.* "dealt specifically with a state law permitting . . . recovery from [an] employer's uninsured and underinsured motorist coverage," but ignores the Court's broader comments that "[a]n action that can be brought without a prior judgment against a tortfeasor is a direct action" and that "the inclusive language of § 1332(c)(1) embraces all direct actions against insurers," 208 F. Supp. 2d 867, 870 (N.D. Ohio 2002) (citations omitted); and

- ERII states that *Scott* v. *Progressive Casualty Insurance Co.* deals "with a state law . . . providing that suit against a motor carrier's insurer for injuries caused by the motor carrier . . . technically sounds in contract," but ignores the Court's comment that "[c]ourts have liberally construed [§ 1332(c)] to effect the legislative intent that nominally diverse actions be denied a federal forum," 1987 U.S. Dist. LEXIS 6198, at *2-*3 (S.D. Ga. June 29, 1987) (citations omitted).

ERII cites *Blake* v. *National Casualty Co.*, 607 F. Supp. 189 (C.D. Ca. 1984), for the proposition that sanctions have been imposed in response to deficient arguments about the scope of § 1332(c). (ERII Opp. Br. at 12-13) But ERII neither asks for sanctions nor discusses the details of that case, which are not remotely applicable here. In *Blake*, a minor acting through her guardian *ad litem* sued two insurers for a breach of statutorily-imposed duties that could not have been imposed against the insured, her employer. The insurers removed the case to federal court and plaintiff sought remand under § 1332(c). The Court denied plaintiff's motion and awarded $500 in costs because (i) existing Ninth Circuit case law rendered plaintiff's contention legally impossible, and (ii) plaintiff's attorney had not acknowledged or attempted to distinguish this controlling authority. Unlike *Blake*, here ERII has chosen not to pursue Pepper and Gagne at

-4-

this time for the repayment of the money that ERII advanced to them, but rather to file a direct action against Westport because Westport is Pepper and Gagne's insurer, and that is why this action is a direct action. The direct action exception in § 1332(c)(1) applies here, and because it does the Court lacks jurisdiction over the subject matter of this action.

## II.

### PEPPER IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT

ERII concedes that Pepper is entitled to intervene, but argues that Pepper is not entitled to do so as a plaintiff against ERII. *See* ERII Opp. Br. at 6. ERII ignores that the thrust of both ERII's and Westport's position is that neither is obligated to provide Pepper coverage. *See* ERII Complaint ¶ 2; Westport Answer pp. 11-14. ERII also ignores that even if the outcome of this litigation is simply a determination that one policy period governs and another does not, the difference to Pepper could be $10 million in insurance coverage.

A proposed intervenor must show that he has a "direct, substantial, and legally protectable" interest in the subject matter of the action. *See Brennan v. New York City Board of Education*, 260 F.3d 123, 129 (2d Cir. 2001). Pepper has an interest in any dispute in which its insurers are seeking to avoid or limit their coverage obligations to it.

ERII argues that Pepper's rights will not be impaired because, "[u]nless Pepper becomes a party to this action through intervention, neither collateral estoppel nor *res judicata* will bar it from litigating in its State court action any issue that is decided in this action." (ERII Opp. Br. at 15)  ERII misses the point. *See Oneida Indian Nation v. State of New York*, 732 F.2d 261, 265 (2d Cir. 1984) ("Because we believe that there is a substantial likelihood that the claims and interests of the proposed intervenors concerning the [subject matter of the action] may be adversely affected at least by principles of *stare decisis*, arising out of the final judgment to be entered in this case, we conclude that they may intervene as a matter of right.") (internal

citations omitted); *Hartford Fire Insurance Co.* v. *Mitlof*, 193 F.R.D. 154, 161-62 (S.D.N.Y. 2000) (although *res judicata* did not apply, intervention of right was warranted where "as a practical matter" principles of *stare decisis* could cause intervenor's claim to "be compromised by the outcome of the instant litigation").[3]

ERII argues that Pepper's interest in maintaining its insurance coverage will be protected by its insurers (ERII Opp. Br. at 15) — despite the fact that both insurers disclaim coverage. *See* ERII Complaint ¶ 2; Westport Answer pp. 11-14. Rule 24(a) "requires only that the applicants show that their representation [in the action] 'may be' inadequate, and the burden of such a showing 'should be treated as minimal.'" *Herman* v. *Raska*, 1998 WL 214787, at *2 (S.D.N.Y. Apr. 30, 1998), quoting *United States Postal Service* v. *Brennan*, 579 F.2d 188, 191 (2d Cir. 1978). Pepper has met its minimal burden. *See Oneida*, 732 F.2d at 266 (existing parties do not represent adequately the interests of the proposed intervenors where interests of parties and intervenors deemed "divergent"); *Pereira* v. *National Union Fire Insurance Co. of Pittsburgh, Pa.*, 2006 WL 1982789, at *9 (S.D.N.Y. July 12, 2006) (proposed intervenors' rights not adequately protected where "none of the parties [to the action] advocates for the Intervenors' claims of a right to payment of defense costs" in connection with litigation for which intervenors sought coverage under insurance policies).[4]

---

[3] Following the 1966 amendments to Rule 24(a)(2), courts interpreting the Rule have held "that the rule was modified to divorce it from strict *res judicata* considerations, [and] have repeatedly concluded that the potential for generating adverse precedent, applicable in other related cases under the doctrine of stare decisis, may 'as a practical matter impair or impede' an applicant's ability to protect an interest relating to the property or transaction which is the subject of the action." *Klamath Irrigation District* v. *United States*, 64 Fed. Cl. 328, 330 (2005) (summarizing 1966 amendments to Rule 24; collecting cases considering stare decisis in Rule 24(a) analysis).

[4] ERII's citation to *Maricco* v. *Meco Corp.*, 316 F. Supp. 2d 524 (E.D. Mich. 2004), demonstrates only that so long as there is "*any* prospect that an existing party" might not vindicate a proposed intervenor's interest, that prong of the inquiry is satisfied. *Id.* at 526 (emphasis in original).

ERII concedes that Pepper is entitled to intervene in this action. ERII argues only that Pepper should be aligned with ERII to preserve the requirements of complete diversity, relying entirely on the non-binding holding in *Maricco*, 316 F. Supp. 2d at 524, to support its position. However, the intervening plaintiff in that case made no argument as to how the parties should be aligned, and sought to recover *only* from the plaintiff to the original action. *Id.* at 527-528.

Here, Pepper has alleged in its Complaint in Intervention that it is adverse to both ERII and Westport because both disclaim coverage. *See* Complaint in Intervention ¶¶ 24, 27-28, 31-32. In determining how the parties should be aligned, the Second Circuit in *Maryland Casualty Co. v. W.R. Grace & Co.*, 23 F.3d 617 (2d Cir. 1993), rejected a narrower "primary purpose of the litigation" test in favor of a broader "collision of interests" test, requiring a "practical examination" of the "realities of the record" to discover the "real interests of the parties." *Id.* at 622-23, citing *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63 (1941). Here, the true collision of interests is between Pepper on the one hand and its disclaiming carriers on the other.

### III.

### THIS ACTION SHOULD BE DISMISSED PURSUANT TO RULE 19

ERII argues that Pepper is not a necessary party under Rule 19(a) for the same reasons Pepper is not entitled to intervene as of right. (ERII Opp. Br. at 15) Thus, its arguments fail for the same reasons.

A party is necessary to an action where that "person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a). The principal issue being

litigated in this action, namely, which policy period provides coverage to Pepper, is identical to an issue being litigated in the pending state court action. ERII attempts to distinguish this Court's decision in *Shimkin* v. *Tompkins, McGuire, Wachenfeld & Barry*, 2003 WL 21964959, at *4 (S.D.N.Y. Aug. 19, 2003) (Cote, J.) -- "[i]f the resolution of the plaintiff's claim would require the definition of a non-party's rights under a contract, 'it is likely' that the nonparty is necessary under Rule 19(a)" -- by claiming that Pepper's rights will not be adjudicated in this action due to "the separate State court action." (ERII Opp. Br. at 16) But it is precisely because this same issue is being litigated in another forum that Pepper faces "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Rule 19(a). Pepper is a necessary party.

Because Pepper's joinder would destroy complete diversity (Pepper Opening Br. at 12), the Court must determine whether Pepper is required party under Rule 19(b), in which case the action should be dismissed. This requires the Court to consider (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (a) protective provisions in the judgment; (b) shaping the relief; or (c) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. *See* Rule 19(b).

Because ERII concedes that it has an adequate remedy in state court (ERII Opp. Br. at 16), only the first three points need be addressed.

ERII argues that Pepper will not be prejudiced because Pepper will not be collaterally estopped by any decision in this case. (*See* ERII Opp. Br. at 16) But the notions of prejudice courts take into account in this inquiry are much broader. Indeed, in *American Home As-*

-8-

*surance Co.* v. *Babcock & Wilcox Co.*, 2007 WL 4299847, at *4-*5 (E.D.N.Y. Dec. 6, 2007), the court did not focus on whether the proposed intervenor would have been collaterally estopped, but rather dismissed the case for non-joinder because "as a practical matter" a disposition in that action might "impair or impede [the assignee]'s ability to protect [its] interest." *Id.* at *5. ERII attempts to distinguish this case because it did not involve a "separate contractual or indemnification action between insurers." (ERII Opp. Br. at 17) The relevant inquiry, however, is not centered on the nature of the action, but rather the existence of some prejudice or impairment, which inquiry goes beyond whether the party would be collaterally estopped or subject to *res judicata*. *See ING. Hoschek Autoverleich GES.M.B.H.* v. *Balag, Ltd.*, 1994 WL 701989, at *4 (S.D.N.Y. Dec. 14, 1994) (absent party held indispensable under Rule 19(b) where "an unsuccessful defense with adverse findings of fact could establish a negative precedent that prejudices [the absent party] in any subsequent proceeding"); *Spiro* v. *Parker Bros.*, 1992 WL 197405, at *2-*3 (S.D.N.Y. Aug. 4, 1992) (absent party held indispensable under Rule 19(b) where a judgment rendered in the absence of the absent party "may substantially prejudice" the absent party or defendant in subsequent actions given that defendant "may be subject to multiple or inconsistent obligations, and the [absent party] could be adversely affected by negative precedent if Defendant is successful in the instant case").

      ERII asserts that "because this action presents no danger of prejudice to Pepper, the shape of relief and the possibility of protective orders are irrelevant." (ERII Opp. Br. at 16) But the prejudice here to Pepper is very real, and arises from the very outcome itself, rather than the shape or nature of the relief which will be provided.

      Finally, ERII argues that a judgment rendered in Pepper's absence would be "adequate" because "Pepper's presence is not necessary for Westport to make ERII whole."

(ERII Opp. Br. at 17)  But the notion of what is "adequate" under Rule 19(b) is, as the Supreme Court has just recently explained, broader.  *See Republic of the Philippines* v. *Pimentel*, --- S. Ct. ---, 2008 WL 2369068, at *13 (U.S. June 12, 2008) ("[A]dequacy refers to the 'public stake in settling disputes by wholes, whenever possible.'  This 'social interest in the efficient administration of justice and the avoidance of multiple litigation' is an interest that has 'traditionally been thought to support compulsory joinder of absent and *potentially adverse* claimaints.'") (citations omitted) (emphasis added); *see also Picciotto* v. *Continental Casualty Co.*, 512 F.3d 9, 18-19 (1st Cir. 2008) ("the striking similarity between the claims in [a federal case] against the insurance companies and the claims against [an absent party] and others in the state court litigation 'demonstrates the availability of an alternative forum and the efficiency of litigating the entire case in state court'").  Simply because ERII would prefer to proceed in this action without Pepper does not make it right.

## CONCLUSION

This action was improvidently removed from state court.  This Court lacks jurisdiction over the subject matter of this action.  The action should be remanded to state court where it will be consolidated with the presently pending related action between the same parties.

Alternatively, Pepper should be allowed to intervene of right, and the Court should find Pepper to be an indispensable party, in which case, because Pepper's joinder would destroy diversity jurisdiction, the action should be dismissed.

Dated: June 13, 2008

                    CAHILL GORDON & REINDEL LLP

                    By: /s/ _____
                         Charles A. Gilman
                         David G. Montone
                  Eighty Pine Street
                  New York, New York 10005
                  (212) 701-3000

                  *Attorneys for Pepper Hamilton LLP*